# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAWN THOMPSON, on her own behalf and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-cv-11169 |
| v. | ) ) | |
| WYETH, INC., et al. | ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO REMAND

Kenneth G. Gilman, Esq.
Douglas M. Brooks, Esq.
Douglas J. Hoffman, Esq.
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
Tel: (617) 742-9700
Fax: (617) 742-9701


Attorneys for Plaintiff and Proposed Class
Representative Dawn Thompson

00005083.WPD ; 1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    I.      THE RELEVANT LEGAL STANDARDS ....................................................... 3

    II.     CAFA DOES NOT APPLY TO THIS CASE ................................................. 4

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

### CASES

*Abernathy v. Consolidated Cab Co.*,
169 F. Supp. 831 (D. Kan. 1959) ........................................................................ 7, 12

*Alshrafi v. American Airlines, Inc.*,
321 F.Supp. 2d 150  (D. Mass. 2004) ...................................................................... 4

*American Buildings Company v. Varicon, Inc.*,
616 F.Supp. 641 (D. Mass. 1985) ........................................................................... 4

*Beneficial National Bank v. Anderson*,
123 S. Ct. 2058 (2003) ........................................................................................... 3

*BIW Deceived v. Local S6*,
132 F. 3d 824 (1st Cir. 1997) ................................................................................. 4

*Casteel v. Great southern Trucking Co.*,
167 F. Supp. 435 (E.D. Tenn. 1958) ..................................................................... 11

*Cedillo v. Valcar Enters.*,
73 F. Supp. 932 (N.D. Tex. 1991) ......................................................................... 11

*Danca v. Private Health Care Systems, Inc.*,
185 F. 3d 1 (1st Cir. 1999) ...................................................................................... 4

*Gattegno v. Sprint Corporation*,
297 F. Supp. 2d 372 (D. Mass. 2003) ..................................................................... 4

*Hankins v. Pfizer, Inc., CV 05-1797 ABC (Rzx)*
(C.D. Cal. March 25, 2005) ..................................................................................... 2

*Hunt v. Transport Indem. Ins. Co.*,
No. 90-00041, 1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) .............. 7, 11

*Keiffer v. Travelers Fire Ins. Co.*,
167 F. Supp. 398 (D. Md. 1958 ) ....................................................................... 8, 11

*Knudsen v. Liberty Mutual Insurance Company*,
No. 05-8010, 2005 U.S. App. LEXIS 10440 (7th Cir. June 7, 2005) ................... 1, 10

*Lomax v. Duchow*,
    163 F. Supp. 873 (D. Neb. 1958) ......................................................................... 8, 11

*Lorraine Motors, Inc. v. Aetna Cas. & Surety Co.*,
    166 F. Supp. 319 (E.D.N.Y. 1958) ....................................................................... 7, 8

*Lott v. Pfizer, Inc.*,
    Case No. 05-cv-0230-MJR at 4 (S.D. Ill. April 7, 2005) ............................................ 2

*Pritchett v. Office Depot, Inc.*,
    360 F. Supp. 2d 1176 (D. Col. 2005) ................................................. 1, 3, 5, 6, 10-12

*Rhinehart v. Cincinnati, Inc.*,
    716 F. Supp. 7 (E.D. Mich. 1989) ....................................................................... 8, 11

*Smith v. Pfizer, Inc.*,
    Case No. 05 cv-0112-MJR, at 9 (S.D. Ill. March 24, 2005) ....................................... 2


## STATUTES

28 U.S.C. § 1332 ....................................................................................................... 1, 5

28 U.S.C. § 1332(d) ................................................................................................... 1, 5

28 U.S.C. § 1441(a) ...................................................................................................... 3

28 U.S.C. § 1453. ...................................................................................................... 1, 5

P.L. 109-2, Section 4 ..................................................................................................... 5

P.L. 109-2, Section 5 ..................................................................................................... 5

P.L. 109-2, Section 9 ..................................................................................................... 5

**INTRODUCTION**

Plaintiff Dawn Thompson ("Plaintiff"), by and through her undersigned counsel of record, hereby submits this response to the Notice of Removal ("Notice") filed by Defendants Pfizer, Inc. ("Pfizer") and Warner Lambert Company LLC ("Warner-Lambert") on June 6, 2005.

This action was originally filed in the Superior Court for Essex County, Massachusetts on February 11, 2005.  In the Notice, Pfizer and Warner-Lambert claim that the case is subject to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 (hereinafter referred to as "CAFA"), even though it is undisputed that the case was filed in state Court prior to the enactment of CAFA on February 18, 2005.  Although they can cite no case law or other authority confirming their reading of the statute, Pfizer and Warner-Lambert contend that CAFA is essentially retroactive, and that an action is not "commenced" for the purposes of CAFA until it is removed to federal court.

Not surprisingly, this untenable "logic" has been rejected by every district court and court of appeal to consider it thus far, including the Court of Appeals for the Tenth Circuit, *Pritchett v. Office Depot, Inc.*, 360 F. Supp. 2d 1176 (D. Col. 2005)[1], *affirmed*, 404 F. 3d 1232 (10th Cir. 2005)[2] ("the term 'commenced' in Section 9 of [CAFA] refers to the date the action was first filed in a court of proper jurisdiction, and not the date that it was removed to federal court"), and the Seventh Circuit in *Knudsen v. Liberty Mutual Insurance Company*, No. 05-8010, 2005 U.S. App. LEXIS 10440, at *2-3 (7th Cir. June 7, 2005) (agreeing with

---

[1]  Referred to herein as *Pritchett* DC.

[2]  Referred to herein as *Pritchett* App.

*Pritchett's* conclusion that "a civil action is 'commenced' for purposes of § 9 [of CAFA] when it is filed in state court and not when some later step occurs in its prosecution," such as removal to federal court).

This argument has also been raised by Pfizer in several other federal district courts and has been rejected each time. *Hankins v. Pfizer, Inc.,* CV 05-1797 ABC (Rzx), at 3 (C.D. Cal. March 25, 2005)[3] ("[r]emoving defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed"); *Smith v. Pfizer*, *Inc.*, Case No. 05 cv-0112-MJR at 9 (S.D. Ill. March 24, 2005)[4] ("[t]his Court rejects Pfizer's argument that 'commenced' means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed"); *Lott v. Pfizer, Inc.*, Case No. 05-cv-0230-MJR at 4 (S.D. Ill. April 7, 2005)[5] (same).  Each of these decisions addressed ***the exact issue raised here:*** what constitutes "commencement" of an action under CAFA.  These decisions recognize that the term "commenced" in Section 9 of CAFA refers to the date the action was first filed in a court of proper jurisdiction, not the date it was removed to federal court.  These decisions further recognize that Congress specifically rejected proposals to make CAFA applicable to cases already pending in state court, and that statements on the floor by the bill's sponsors reveal that CAFA was never intended to apply to cases already pending in state court.

Although Pfizer and Warner-Lambert cite cases which address other jurisdictional

---

[3]  Copy submitted herewith as Exhibit A.

[4]  Copy submitted herewith as Exhibit B.

[5]  Copy submitted herewith as Exhibit C.

00005083.WPD ; 1

2

provisions and amendments (Notice ¶ 17), nowhere in the Notice do Pfizer or Warner-Lambert cite a single case that adopts their position regarding the "commencement" of an action under CAFA.  As explained in detail below, the legislative history of CAFA makes it "clear that supporters and opponents of the bill in both houses understood that the Act would not apply to pending cases."  *Pritchett* DC, 360 F. Supp. 2d at 1179.

This Court should therefore reject Pfizer and Warner-Lambert's deeply flawed interpretation of CAFA.  Because CAFA only applies to actions "commenced" on or after February 18, 2005, and because this action was commenced on February 11, 2005 when it was first filed in the Superior Court for Essex County, a court of proper jurisdiction, CAFA has no application here and cannot provide a basis for federal jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.*, Nos. 04-70, 04-79, 2005 U.S. LEXIS 5015, at *47 (2005) ("The CAFA . . . is not retroactive . . .").

Because Pfizer and Warner-Lambert's entire argument for the existence of diversity jurisdiction is premised upon the applicability of CAFA to this case, the only proper result is for this case to be remanded to Essex County Superior Court.

## ARGUMENT

### I.    THE RELEVANT LEGAL STANDARDS

A civil action is removable only if the plaintiff could have originally brought the action in federal court.  *See* 28 U.S.C. § 1441(a).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  Generally, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.  *Beneficial National Bank v.*

*Anderson*, 123 S. Ct. 2058, 2062 (2003) ("*Beneficial*").  It is axiomatic that the removal statute is to be strictly construed and that any doubts about the propriety of removal are to be resolved against the removal of an action.  *See*, *e.g.*,  *Danca v. Private Health Care Systems, Inc.*,  185 F. 3d 1, 4 (1st Cir. 1999); *BIW Deceived v. Local S6*,  132 F. 3d 824, 831 (1st Cir. 1997); *Alshrafi v. American Airlines, Inc.*, 321 F.Supp. 2d 150, 153 (D. Mass. 2004, Young, C.J.); *American Buildings Company v. Varicon, Inc.*, 616 F.Supp. 641, 643 (D. Mass. 1985, Young, J.).[6]  Furthermore, a party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction.  *BIW Deceived*, 132 F. 3d at 831; *Alshrafi*, 321 F.Supp. 2d at 153; *Gattegno v. Sprint Corporation*, 297 F. Supp. 2d 372, 374 (D. Mass. 2003).

## II.    CAFA DOES NOT APPLY TO THIS CASE

On June 7, 2005, Pfizer and Warner-Lambert filed a Notice of Removal with this Court, arguing that this Court has diversity jurisdiction over this action because the provisions of CAFA apply to this case.[7]  Section 9 of CAFA provides that the "amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]."  109 P.L. 2, Sec. 9.  However, Pfizer and Warner-Lambert claim that the term "commenced" in section 9 refers to the date that a defendant *removes* the case to federal court.  (Notice ¶ 22).  They therefore contend that CAFA applies to this action because it was not "commenced" until the Notice of Removal was filed.  *Id.*

---

[6]       There is nothing in CAFA that can be read to abrogate this basic principle, nor have Pfizer and Warner-Lambert cited any provision or language which has such an effect.

[7]       Pfizer and Warner-Lambert do not contend that there would be diversity jurisdiction over this case without the application of CAFA.

This case should be remanded to the Essex County Superior Court because the term "commenced" in Section 9 of CAFA refers to the date the action was first filed in a court of proper jurisdiction, not the date it was removed to federal court. *Pritchett* DC, 360 F. Supp. 2d at 1181; *Pritchett* App., 404 F.3d at 1238. Pfizer and Warner-Lambert's interpretation of the term "commenced" in the context of CAFA is nonsensical given the plain language and legislative history of CAFA, and it has been rejected by each federal court to address the issue.

By its provisions, CAFA amended 28 U.S.C. § 1332 to loosen the requirements for diversity jurisdiction in connection with certain class action cases.[8] Section 5 of CAFA allows for the removal of such applicable class actions to federal court. P.L. 109-2, Section 5; 28 U.S.C. § 1453. As noted above, CAFA was enacted on February 18, 2005. CAFA states that "[t]he amendments made by this Act shall apply to any civil action *commenced on or after* the date of enactment of this Act." P.L. 109-2, Section 9.

In *Pritchett*, the Defendant made the exact same argument offered here by Pfizer and Warner-Lambert. Both the District Court and the Tenth Circuit Court of Appeals reached the following conclusion:

> [T]his Court determines that the term "commenced" in Section 9 of the Act refers to the date the action was first filed in a court of proper jurisdiction, not the date that it was removed to federal court. Consequently, ***the Act does not apply to cases, such as this one, commenced prior to February 18, 2005***.

---

[8] The statute establishes subject-matter jurisdiction in federal court over class actions where (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of the defendant, and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds five million dollars, exclusive of interest and costs. P.L. 109-2, Section 4; 28 U.S.C. § 1332(d).

*Pritchett* DC, 360 F. Supp. 2d at 1181 (emphasis added); *Pritchett* App., 404 F.3d at 1238 ("[b]ecause we conclude that removal to federal court does not 'commence' an action for the purposes of the Class Action Fairness Act of 2005, the district court's remand order is AFFIRMED").

In *Pritchett*, the Tenth Circuit started its analysis with the "well-established" principle that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed." *Pritchett* App., 404 F.3d at 1235; *Pritchett* DC, 360 F. Supp. 2d at 1181 (noting that all doubts are to be "resolved against federal jurisdiction"). The Courts also considered the meaning of the term "commenced," observing the fact that "traditionally, a cause of action is commenced when it is first brought in an appropriate court, which here was when it was brought in state court . . . When a matter is removed to federal court, it is not traditionally viewed as recommenced, nor as a new cause of action." *Pritchett* App., 404 F.3d at 1235; *Pritchett* DC, 360 F. Supp. 2d at 1181. (same).

The Tenth Circuit in *Pritchett* also reviewed the legislative history of CAFA. The Court discovered that Congress had expressly rejected a provision that would have made CAFA applicable to actions already pending in state court as of its effective date:

> When the Act was originally introduced in the House, the removal provision applied both to cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. In contrast, neither the Senate version of the bill nor the final statute passed by both houses of Congress provided for removal of actions certified on or after the enactment date. The Senate version and the final statute provided only for application of the Class Action Fairness Act to civil actions "commenced" on or after the date of the Act. It is thus clear that Congress initially started out with broader language that could have included a number of then-pending lawsuits in state courts. ***By excising the House provision, Congress signaled an intent to narrow the removal provisions of the Act to***

> ***exclude currently pending suits.***

*Pritchett* App., 404 F.3d at 1236 (citing House and Senate Reports) (emphasis added).

Moreover, *Pritchett* observed that the Congressional Record contained two statements from sponsoring legislators indicating that the bill was not designed to apply to currently pending lawsuits. *Pritchett* App., 404 F.3d at 1236-37 (citing 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.")). Accordingly, Pfizer and Warner-Lambert's reading of CAFA Section 9 is directly contradictory to the express intent of Congress.

　　　*Pritchett* also addressed some prior cases, including cases cited by Pfizer and Warner-Lambert here, addressing amendments to other jurisdictional provisions, such as the amount in controversy minimum requirement: *Lorraine Motors, Inc. v. Aetna Cas. & Surety Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958); and *Hunt v. Transport Indem. Ins. Co.*, No. 90-00041, 1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) (Notice ¶¶ 17-20).[9] The Tenth Circuit noted that *Lorraine Motors* and *Hunt* are "relevant only by analogy," as they dealt with a completely different statutory provision, *Pritchett* App., 404 F.3d at 1237. In addressing these cases, the Tenth Circuit stated:

---

[9] The District Court's opinion in *Pritchett* also rejected *Abernathy v. Consolidated Cab Co.*, 169 F. Supp. 831 (D. Kan. 1959), cited by Pfizer and Warner-Lambert, which it considered to be among the *Lorraine Motors* line of cases. *Pritchett* DC, 360 F. Supp. 2d at 1178-79.

7

> [T]here is a major difference between a statute that defines additional
> circumstances in which diversity of citizenship exists (such as the Class
> Action Fairness Act) and a statute that increases the amount-in-controversy
> requirement. The latter attempts to restrict federal court jurisdiction, while
> the former attempts to expand it. Both *Hunt* and *Lorraine Motors* rely heavily
> upon the principle that removal statutes are to be strictly construed, with all
> doubts resolved against removal. Thus, in those cases, interpreting the term
> "commenced" as referring to the filing of the removal petition would serve
> that aim by restricting the number of preexisting state claims that could be
> removed. In contrast, such an interpretation here would actually permit
> broader federal court jurisdiction by increasing the number of removable
> actions. Given this, we remain convinced that [the] term "commenced" in the
> Act refers to the initial filing, not the removal date.

*Pritchett* App., 404 F.3d at 1237-38 (citations omitted).[10]

The Tenth Circuit also recognized that *Lorraine Motors* and *Hunt* were not even the

definitive authority as to the statutory amendments they addressed because ***other***

***contemporaneous cases had reached the opposite conclusion***.[11] *Pritchett* App., 404 F.3d at

1237. Consequently, their relevance to interpreting CAFA was further undermined. *Id.* The

Court of Appeals then noted that the reasoning in *Lorraine Motors* and *Hunt* "actually

support[ed] [its] interpretation of the term 'commenced'" and that both cases "rely heavily

upon the principle that removal statutes are to be strictly construed, with all doubts resolved

against removal." *Id.*

Realizing that *Pritchett* provides a sound basis for remanding this case to state court,

---

[10] The District Court in *Pritchett* also recognized the faulty reasoning advanced by the removing defendant in that case: "it offends reason to permit the removal of a case where the current requirements of diversity jurisdiction were not present at the time the case was first filed in state court." *Pritchett* DC, 360 F. Supp. 2d at 1179 (internal quotation marks omitted).

[11] *Citing Keiffer v. Travelers Fire Ins. Co.*, 167 F. Supp. 398, 402 (D. Md. 1958 ) (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal) and *Rhinehart v. Cincinnati, Inc.*, 716 F. Supp. 7,8 (E.D. Mich. 1989) (same). *See also Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958) (same).

Pfizer and Warner-Lambert try vainly to distinguish or discredit *Pritchett*.  These Defendants attempt to distinguish *Pritchett* on the facts, claiming the holding was reached because the case had already been pending for an extended period of time, and was removed more than 30 days after service of the Complaint.  (Notice ¶¶ 28-30).  The result of *Pritchett*, however, did not rest upon these considerations, and these Defendants completely miss the point.  The Tenth Circuit's decision in *Pritchett* was based on a finding that Congress did not intend for the CAFA to apply to cases already pending in state court.  In fact, *Pritchett* explicitly holds that CAFA does not apply to *any* case filed in state court prior to February 18, 2005. *Pritchett* App., 404 F.3d at 1238; *Pritchett* DC, 360 F. Supp. 2d at 1181.  In addition, the U.S. Supreme court has recently reached a similar holding, stating that: "[t]he CAFA . . . is not retroactive . . ." *Exxon Mobil*, 2005 U.S. LEXIS 5015, at \*47 (holding that CAFA is irrelevant to interpreting the supplemental jurisdiction statute as it existed prior to CAFA's enactment).  Whether a case was filed two years or two days before enactment of CAFA is irrelevant.  CAFA simply does not reach any case filed in state court prior to February 18, 2005.  The analysis ends there.

Pfizer and Warner-Lambert also try to discredit *Pritchett* by contending that its holding is contrary to Congress' intent, in enacting CAFA, to expand federal jurisdiction.  (Notice ¶¶ 30-31).  Although CAFA certainly broadened federal jurisdiction in some specified circumstances, it only did so for cases that fall under its purview, and as already demonstrated, this is not such a case.  Despite these Defendant's protestations to the contrary, the District Court in *Pritchett* is correct when it states: "[a]lthough the Act is unusual in that it seeks to broaden federal jurisdiction in certain specified circumstances, it

does not purport to abrogate [the principle that removal statutes are to be strictly construed and doubts are to be resolved against federal jurisdiction]." *Pritchett* DC, 360 F. Supp. 2d at 1181. The Tenth Circuit also addressed this point, as follows:

> [w]e are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. But these general sentiments do not provide *carte blanche* for federal jurisdiction over a state class action any time the statute is ambiguous. ***While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously***.

*Pritchett* App., 404 F.3d at 1237, n.6 (citations omitted) (emphasis added). *See also Pritchett* DC, 360 F. Supp. 2d at 1179 ("the general statement of purpose [of broadening access to the federal courts] in Section 2 of the Act does not address the more specific question of Congress' intent with regard to the effect of the act on existing cases. The legislative history provides some evidence of a Congressional intent not to affect existing cases.").

The Tenth Circuit's decision in *Pritchett* was recently further bolstered by the Seventh Circuit in *Knudsen,* which also stated that an action was "commenced" for purposes of CAFA when it was originally filed in state court. In *Knudsen*, the Seventh Circuit concluded as follows:

> Section 9 [of CAFA] tells us that it applies only to suits "commenced on or after the date of enactment of this Act." That date is February 18, 2005 . . . Liberty Mutual Insurance Company removed this class action, which had been pending in state court since March 2000. The district judge promptly sent it back, observing that March 2000 precedes February 2005. Now Liberty Mutual asks us to entertain an appeal . . .
>
> We deny this petition, for we agree with *Pritchett v. Office Depot, Inc.*, 2005 U.S. App. LEXIS 5896 (10th Cir. Apr. 11, 2005), that § 9 of the new Act must

be taken seriously.  Deconstructionist tactics do not permit its evasion. The defendant in *Pritchett* contended that the notice of removal itself commenced a new case (the one in federal court).  Rebuffing that effort to sidestep the legislative decision, *Pritchett* concluded that a civil action is "commenced" for purposes of § 9 when it is filed in state court and not when some later step occurs in its prosecution. ***Equating filing with commencement is the norm in civil practice.***  See Fed. R. Civ. P. 3.

*Knudsen*, 2005 U.S. App. LEXIS 10440, at *1-2 (emphasis added).

The *Pritchett* and *Knudsen* decisions represent the only federal court decisions to address the exact issue raised by Pfizer and Warner-Lambert in the context of CAFA, whereas the cases cited by these Defendants address completely different jurisdictional provisions and as recognized in *Pritchett*, they are relevant, if at all, only by analogy.[12] Second, the cases cited by Pfizer and Warner-Lambert are undercut by the presence of contemporaneous contrary authority.  *See*, *e.g.*, *Rhinehart*, *supra*; *Kieffer*, *supra*; *Lomax*, *supra*.  Even *Hunt*, one of the three cases relied upon by Pfizer and Warner-Lambert, recognized the existing "split of authority" on the issue at the time.  *Hunt*, 1990 U.S. Dist. LEXIS 16555, at *12.  Pfizer and Warner-Lambert completely ignore this conflicting authority.

Finally, most of the cases cited by Pfizer and Warner-Lambert in paragraph 17 of the Notice rely on the principle that removal statutes are to be strictly construed.  They are, therefore, consistent with *Pritchett* and support the construction of CAFA that would result

---

[12]  *Casteel v. Great southern Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958), also cited by defendants, is a woefully outdated one-page district court decision citing *Lorraine Motors*, which addresses the 1958 amendment to the amount in controversy requirement under the diversity jurisdiction statute.  It provides very little in the way of a legal basis for its decision and has never been cited as authority in any published decision by any Court.  *Cedillo v. Valcar Enters.*, 773 F. Supp. 932 (N.D. Tex. 1991) was a case addressing amendments to the supplemental jurisdiction statute and is therefore relevant only by analogy.

in a remand of this case. *See Lorraine Motors*, 166 F. Supp. at 322 ("[i]t has been held uniformly that the removal statutes are to be strictly construed and that removal should not be granted if there is doubt as to the right of removal in the first instance") (citations omitted); *Hunt*, 1990 U.S. Dist. LEXIS at *16-17 (basing holding, in part, upon "The Ninth Circuit's statement in *Libhart* that removal statutes should be strictly construed against removal"); *Abernathy v. Consol. Cab Co.*, 169 F. Supp. 831, 834 (D. Kan. 1959) (remanding case pursuant to the policy that the diversity jurisdiction statute was to be construed strictly).

A final reason to reject Pfizer and Warner-Lambert's interpretation of CAFA is that there would be no end to the reach of the statute, as it would permit the removal of nearly every pending class action in every state court. As the Tenth Circuit stated in *Pritchett*: ". . . Defendant's argument, if accepted, could have serious consequences for both the federal judiciary and . . . the state bench. Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, 'be extraordinarily disruptive of many State court proceedings.'" *Pritchett* App., 404 F.3d at 1238 (citing 151 Cong. Rec. S1225 (daily ed. Feb. 10, 2005) (statement of Sen. Specter)). The Tenth Circuit went on to state: "The consequences of Defendant's argument are sufficiently dramatic that we are not eager to ascribe those motivations to Congress without a clearer expression than we find here." *Id.* The District Court described the consequences of Defendants' interpretation in even more detail:

> [R]eading the statute in the manner urged by the Defendant . . . would permit
> the removal of nearly every presently-pending class action in every state
> court, resulting in a sudden tidal wave of filings on an already burdened
> federal judiciary, rather than the gradual, incremental flow of newly-filed
> class actions that would result from a purely prospective application of the

Act.  Such a reading would also deem certain substantive provisions of the Act to apply to presently-pending cases, potentially frustrating the expectations of current litigants.  For example, Section 3 of the Act creates new, substantive restrictions on the approval of "coupon settlements," in which class-action plaintiffs receive coupons instead of cash.  If the Court were to construe the Act to apply to cases then-pending in state courts [it would] frustrate the expectations of parties who might have litigated these suits to near-conclusion, only to find that a negotiated settlement that awaited judicial approval was stymied by the Act.

*Pritchett* DC, 360 F. Supp. 2d at 1181 (citations omitted).  Given the ridiculous

consequences that would necessarily flow from Pfizer and Warner-Lambert's interpretation

of CAFA, Plaintiffs urge this Honorable Court to reject their flawed interpretation, and to

hold, in accordance with the clear intent of Congress, that CAFA does not apply to this case.

## CONCLUSION

For all of the reasons set forth herein, the motion to remand should be granted and

this action should be remanded to the Superior Court for Essex County Massachusetts.

DATED:  June 29, 2005

GILMAN AND PASTOR, LLP

By:    /s/ Douglas M. Brooks
       Douglas M. Brooks, BBO #058850
       Kenneth G. Gilman, BBO #192760
       Douglas J. Hoffman BBO #640472
       60 State Street, 37th Floor
       Boston, MA 02109
       Tel: (617) 742-9700
       Fax: (617) 742-9701

       Attorneys for Plaintiff and Proposed Class
       Representative Dawn Thompson

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing was served by first class mail upon the following counsel of record not identified on the NEF as electronic recipients:

| | |
|---|---|
| John E. Hall, Esq. | Joseph F. Shea, Esq. |
| Michael Labson, Esq. | Nutter McClennen & Fish LLP |
| Covington & Burling | World Trade Center West |
| 1201 Pennsylvania Ave., N.W. | 155 Seaport Blvd. |
| Washington, D.C. 20004 | Boston, MA 02210-2604 |
| | |
| ***Counsel for Proctor and Gamble Company*** | ***Counsel for McNeil-PPC, Inc.*** |

GILMAN AND PASTOR, LLP

By:     /s/ Douglas M. Brooks
        Douglas M. Brooks, Esq.

00005083.WPD ; 1

# EXHIBIT A

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ✓
JS-2/JS-3 ——
Scan Only ——

ENTERED
CLERK, U.S. DISTRICT COURT

MAR 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

MAR 25 2005

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

SCANNED



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MONICA HANKINS,<br><br>             Plaintiff<br><br>      v.<br><br>PFIZER, INC., et al.,<br><br>             Defendants. | CV 05-1797 ABC (RZx)<br><br>ORDER REMANDING CASE TO STATE COURT<br><br>BC 327641 |

On January 24, 2005, Plaintiff filed a complaint in Los Angeles County Superior Court against Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.), and McKesson Corp. Plaintiff's complaint alleges a single cause of action, namely, state law unfair competition. On March 11, 2005, Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.) (together, "Removing Defendants") removed the action to this Court on the basis of diversity jurisdiction.[1]

---

[1] Removing Defendants do not assert that the Court has federal question jurisdiction, as Plaintiff's complaint involves a single state law claim.

1    Federal courts have jurisdiction under 28 U.S.C. § 1332(a) where

2    an action is between citizens of different states and the amount in

3    controversy exceeds $75,000.  The removal statutes are to be strictly

4    construed; there is an inherent "'strong presumption' against

5    removaljurisdiction."  Gaus v. Miles, 980 F.2d 564, 566 (9th Cir.

6    1992)(quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S.

7    283, 288-89 (1938)).  On February 18, 2005, the Class Action Fairness

8    Act ("CAFA") was passed creating federal diversity jurisdiction where

9    "the matter in controversy exceeds the sum or value of $5,000,000,

10   exclusive of interests and costs, and is a class action in which . .

11   .(A) any member of a class of plaintiffs is a citizen of a State

12   different from any defendant . . . ."  28 U.S.C. § 1332(d)(2).

13       Although Plaintiff initiated this action on January 24, 2005,

14   well before the enactment of CAFA on February 18, 2005, Removing

15   Defendants assert that CAFA governs.  In support of this argument,

16   Removing Defendants cite Hunt v. Transport Indemnity Ins., Co., 1990

17   U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) as authority that the

18   date of commencement of an action is determined by the date an action

19   is removed to federal court.  See Notice of Removal ¶ 2.

20       Hunt involved the 1988 amendment to 28 U.S.C. § 1332, which

21   raised the jurisdictional amount in controversy required for diversity

22   from $10,000 to $50,000.  The Hunt court remanded a state action

23   seeking an amount in controversy more than $10,000, but less than

24   $50,000.  The state action was commenced before, but removed after,

25   the effective date of the jurisdictional increase.  In remanding, the

26   Hunt court construed the date of removal as controlling because of the

27   Ninth Circuit's clear preference for construction of removal statutes

28   against removal.

2

1    <u>Hunt</u> is not controlling authority. In any event, if this Court

2  were to adopt similar reasoning, this Court would construe CAFA

3  against removal such that the date of filing in state court controls,

4  given the strong presumption against removal. <u>See</u> <u>Gaus</u>, 980 F.2d at

5  566 (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288-89).[2]

6        Because the Removing Defendants cannot rely on diversity

7  conferred by CAFA, which was not enacted at the time the state action

8  was filed, Removing Defendants must demonstrate diversity jurisdiction

9  according to 28 U.S.C. § 1332(a). However, Removing Defendants cannot

10  show that the amount in controversy exceeds $75,000, as Plaintiff

11  specifically alleges that the amount in controversy is less than

12  $75,000. <u>See</u> Complaint at 12-13.

13        Therefore, on the Court's own motion, on the basis of the lack of

14  either federal question or diversity jurisdiction, the case is

15  REMANDED to state court.[3]

16

17        SO ORDERED.

18  DATED: _____ March 25, 2005

19

20                                   _____
                                     Audrey D. Collins

20                                   AUDREY B. COLLINS

21                                   UNITED STATES DISTRICT JUDGE

22  _____

23        [2] The Court notes that CAFA specifically provides that the
     citizenship of class members shall be determined as of the date of
24  filing of the complaint. <u>See</u> 28 U.S.C. 1332(d)(7).

25        [3] The Notice of Removal contained several procedural defects,
     including the failure of all defendants to join in the removal and
26  Removing Defendants' failure to establish that the case was removed
     thirty (30) days from when the <u>first</u> defendant was served. However,
27  given that the Court bases its remand on the lack of jurisdiction,
     these procedural defects are moot.

28

3

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARY SMITH, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05-cv-0112-MJR |
| PFIZER, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM and ORDER

REAGAN, District Judge:

In the Circuit Court of Madison County, Illinois, Mary Smith filed a putative class action against Pfizer, Inc., manufacturer of a prescription pain relief medication "Bextra." Pfizer timely removed the case on February 18, 2005, invoking this Court's subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. Ten days later, Judge Herndon recused, and the case randomly was reassigned to the undersigned District Judge.

Before the Court is Plaintiff Smith's fully-briefed remand motion. For the reasons described below, the Court finds that it lacks subject matter jurisdiction and grants the motion.

Smith's state court complaint, based on an Illinois consumer fraud statute, alleges that Pfizer negligently marketed Bextra, despite the fact Pfizer knew of dangerous side effects and symptoms of the drug.

Of significance is what Smith's complaint does *not* seek. She does not sue for any personal injury she or others may have sustained as a result of ingesting Bextra. Nor does she pray for injunctive relief. Rather, she seeks compensatory damages to cover the costs of medical monitoring and testing which would facilitate early detection of any injuries.

Specifically, the complaint asks for damages "sufficient to cover the costs of periodic medical examinations which are reasonably necessary to detect and enable early treatment of injuries and/or diseases caused by Bextra" (Doc. 2, p. 6). As explained further below, this aspect of the complaint plays a key role in determining the amount in controversy.

28 U.S.C. § 1332 confers original jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

Here, complete diversity exists between the parties. The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000). If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under 28 U.S.C. § 1367. *Brand Name*, 123 F.3d at 607.

Pfizer's removal notice alleges: "it is Pfizer's good faith belief" that the amount in controversy exceeds $75,000 (Doc. 1, p. 2). Plainly, that allegation does not meet Pfizer's burden of proof as to the amount in controversy. *See, e.g., Chase*, 110 F.3d at 427 (removing defendant **must support allegations of diversity jurisdiction with "competent proof");** *America's Best*

*Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)(allegations based upon information and belief are insufficient to support diversity jurisdiction).

Pfizer does offer proof to support its contention that the amount in controversy exceeds $75,000. With the removal notice, Pfizer submitted the declaration of Dennis R. Connolly, who has experience in tort-related medical monitoring programs. Connolly suggests that the medical monitoring requested by Smith in this case actually will be much more extensive than Smith anticipates and, despite the fact the class is defined to include only consumers who purchased Bextra in Illinois, the consumers to be tested – and the doctors doing the testing – would be located "throughout the country" (Doc. 1, Exh. C, p. 2).

Furthermore, Connolly predicts that the monitoring will require the establishment of a claims-handling facility. According to Connolly, the cost of "siting" that facility will include expenditures to rent space, store records, manage operations, install hardware and communication lines, purchase furnishings, staff the operations center, train the staffers, and compile and analyze the results of all medical monitoring (*Id.*, p. 3). Relying on the Connolly declaration, Pfizer maintains that the cost to set up this facility and provide medical monitoring for "hundreds of thousands" of class members easily exceeds $75,000, justifying the exercise of jurisdiction in this case.

The Court disagrees. This Circuit does recognize that, in determining the amount in controversy, the Court may consider the cost to defendant of enforcing the requested relief, as well as the value to plaintiff of obtaining that relief. *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 395 (7th Cir. 1989)(adopting "either viewpoint" rule under which the Court may consider the "pecuniary result to either party which the judgment would directly produce").

-3-

But it is far from clear that the either viewpoint rule applies in a case, such as this, in which the plaintiff requests no injunctive relief and instead seeks only compensatory damages. For instance, in *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, **309 F.3d 978, 983-84 (7th Cir. 2002)**, the United States Court of Appeals for the Seventh Circuit sharply distinguished cases in which only money damages were sought (such as Smith's case against Pfizer) from cases in which injunctive relief was sought.

The Court emphasized:

> In a case that seeks only money damages, the amount the defendant will lose is more or less the same. But in a case like this one, for injunctive relief, there may be an asymmetry. The question has thus arisen whether it is proper in determining amount in controversy to look in the alternative to the cost the defendant will incur in complying with the injunction the plaintiff seeks. In this circuit, the answer to the latter question has been yes: it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief – the so-called "either viewpoint" rule. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391- 95 (7th Cir.1979). Those cases specifically establish that the cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy

*Uhl* indicates that the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief. *See also Gould v. Artisoft, Inc.*, **1 F.3d 544, 548 n.4 (7th Cir. 1993)(applying either viewpoint rule to case in which the pecuniary harm to the defendant from the injunctive relief requested by the plaintiff exceeded the amount in controversy).** The instant case contains no such request.[1]

---

[1]   *See also* this Court's 10-20-2003 Order in *Flynn, et al. v. General Motors Corp., et al.*, Case No. 03-cv-0486-MJR, Doc. 34, p. 4 ("Defendants cite no cases extending the 'either viewpoint' rule to complaints seeking only monetary relief.").

-4-

Additionally, even if the either viewpoint rule *does* apply (if the Court accepts Pfizer's argument that Smith's prayer for compensatory damages is really a request for injunctive relief in disguise), the Court is not persuaded that the entire cost envisioned by Pfizer is chargeable to the single named plaintiff (Smith) from whose standpoint the Court evaluates the amount in controversy. As the Seventh Circuit explained in *Brand Name*, 123 F.3d at 609-10:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.[2]

*Accord Del Vecchio v. Conseco, Inc.,* **230 F.3d 974, 977-78 (7th Cir. 2000)(Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated. "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").**

The Court *does* find appeal in Pfizer's argument as to the effect of Smith's purported disclaimer of damages, but that does not support this Court's exercise of diversity jurisdiction.

Plaintiffs' counsel mistakenly believes that remand is warranted based solely on the allegations of the complaint and an accompanying affidavit of counsel. The complaint states:

> Plaintiff stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs.

Doc. 2, p. 2.

---

[2] Nor does this case fit into the narrow exceptions to the anti-aggregation rule recognized in *Snyder v. Harris*, **394 U.S. 332 (1969)** and its progeny – the "common fund exception" which covers situations in which there is a single *res* at issue (like an estate), and the recovery is a "unitary whole." *See Del Vecchio*, 230 F.3d at 977-78.

Simultaneously filed in state court with the complaint is an affidavit of Plaintiffs' counsel that "the total damages sought by the Plaintiff in this cause of action exceeds Fifty Thousand Dollars ($50,000), but is less than Seventy-Five Thousand Dollars ($75,000) per Plaintiff or class member [sic]."

This "stipulation" in Smith's complaint does not prevent removal. Allegations that a plaintiff seeks no more than $75,000 or will not accept damages over $75,000 do not, standing alone, preclude removal. Such allegations properly are *considered* by the Court (and have been considered by this Court in prior cases) but are not determinative of the amount in controversy.

In *American Bankers Life Assur. Co. of Florida v. Evans*, 319 F.3d 907, 908 (7th Cir. 2000), the Seventh Circuit (a) affirmed the determination by Judge William D. Stiehl of this Court that subject matter jurisdiction did not lie and (b) found insufficient an allegation which stated that the damages were "in no event to exceed $75,000."

> The district court properly ignored this detail – **it was neither a limit on recovery**, *see* 735 ILCS 5/2-604; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir.2002) ... **nor a demand for $75,000**, *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)--and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir.2001),

*American Bankers*, 319 F.3d at 908 (emphasis added).

So, the language of the complaint, by itself, does not defeat removal here. Next, the Court examines to the affidavit filed with Plaintiffs' state court complaint in compliance with ILLINOIS SUPREME COURT RULE 222 ("**Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000.**").

The law of this Circuit clearly holds: "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." *Chase*, 110 F.3d at 430, *citing In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). *See also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 3d § 3725 at 87 (a plaintiff's waiver of over $75,000 "must be truly binding on the plaintiff in state court before it will prevent removal"). The question is whether attorney Armstrong's Rule 222 affidavit (filed with Smith's state court complaint) is *binding* as to Smith's damages.

No Seventh Circuit case located by the undersigned Judge or cited by counsel squarely delineates what constitutes a legally binding stipulation/affidavit under *Shell Oil*. A number of federal district courts have held that, to prevent removal, a pre-removal affidavit or stipulation must be signed by the plaintiff, not just plaintiff's counsel. *See, e.g., Asbury-Castro v. GlaxoSmithKline, Inc.*, 352 F. Supp. 2d 729, 733 (N.D. W.Va. 2005)("to be operative, a disclaimer must be 'a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery'"); *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 847 (N.D. W.Va. 2004) ("Therefore, absent a binding stipulation signed by Virden that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000."); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485-86 (S.D. W.Va. 2001)("The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").

Other courts have interpreted an attorney's stipulation as binding on the plaintiff (even when not signed by the plaintiff), *if* the plaintiff confirmed in writing the attorney's authority

to bind the plaintiff. *See Dozier v. Kentucky Finance Co., Inc.,* 319 F. Supp. 2d 716, 719 (S.D. Miss. 2003)(complaint demand for less than $75,000 "coupled with the stipulation of plaintiff's counsel," whose authority to stipulate on behalf of plaintiff has been confirmed by plaintiff himself, established that amount in controversy did not exceed $75,000). *See also Dora v. Citifinancial, Inc.,* 2003 WL 22243996, *4 (N.D. Miss. 2003)(removal thwarted where plaintiffs affirmed that they were legally bound by stipulation which stated "Neither the individual Plaintiffs nor their lawyers will accept an amount that exceeds the federal jurisdictional minimum ...; Neither the individual Plaintiffs nor their lawyers will amend the complaint after one year to plead an amount in controversy in excess of the $74,900, per Plaintiff, nor will they authorize anyone on their behalf or their future heirs and assigns, to make such an amendment").

In the case at bar, the Court already has found the "stipulation" in the complaint that Plaintiff Smith will not seek or accept over $75,000 insufficient to block removal. (For one thing, Plaintiff could amend her complaint at any time and delete that language.) The separate affidavit tendered by lawyer Armstrong was not signed by Smith. Nor did Smith, in any pre-removal document, affirm that stipulation as binding her. The Court is not convinced that the affidavit is "binding" under *Shell Oil,* so as to effectively block removal. Thus, the undersigned Judge must look "instead to the claim's actual value." *American Bankers,* 319 F.3d at 908.

Smith seeks compensatory damages to cover the cost of periodic doctor visits – and presumably tests – to detect any injury or disease caused by ingesting Bextra (Doc. 2, p. 6). She seeks no injunctive relief or punitive damages. She does not ask for a comprehensive system of court-supervised medical monitoring.

Although the estimate of the amount in controversy contained in the complaint is not *dispositive* of the amount in controversy, the Court may consider it. Indeed, accepted wisdom provides " when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." *Barbers*, **132 F.3d at 1205**. The Court cannot conceive how (and Pfizer has not demonstrated that) Smith's claim surpasses the $75,000 jurisdictional bar.

Nor does the Court find persuasive Pfizer's argument that subject matter jurisdiction lies here under the recently-enacted amendments to the federal jurisdictional statutes known as the "Class Action Fairness Act of 2005." Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.

28 U.S.C. § 1332(d)(2)(A) now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. The statute explicitly permits aggregation of claims in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.")**. Pfizer argues that the aggregated claims in the instant case easily exceed $5,000,000 (Doc. 11, p. 9).

The Court, however, concludes that the amendments in question do not apply, because this case was not "commenced on or after the date of enactment" (February 18, 2005). Plaintiff commenced this case by filing her complaint in Illinois state court on December 28, 2004.

The Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed.

-9-

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."). *See also* 151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction does not lie under the federal diversity statute. Because this Court lacks subject matter jurisdiction, it **GRANTS** Smith's February 24, 2005 motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Smith did not request an award of costs and expenses of removal in her remand motion or supporting brief, and the Court **DECLINES** to award such costs under 28 U.S.C. § 1447(c).

**IT IS SO ORDERED.**

DATED this __24th__ day of March, 2005.

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

-10-

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKY LOTT, GERALD SUMNER, SANDY BECKER & MIKE BALDWIN, individually and on behalf of all other similarly situated individuals, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 05-cv-0230-MJR |
| PFIZER, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

On February 17, 2005, four Illinois citizens who live in the St. Clair/Madison County area (Ricky Lott, Gerald Sumner, Sandy Becker, and Mike Baldwin) filed a putative class action suit against Pfizer, Inc., in the Circuit Court of Madison County, Illinois.

Plaintiffs allege that Pfizer, a Delaware corporation with its principal place of business in New York, actively concealed information regarding the risks and dangerous side effects of two medications – Celebrex and Bextra. Celebrex and Bextra are the brand names of two non-steroidal anti-inflammatory drugs manufactured by Pfizer and used to treat musculoskeletal problems.

More specifically, Plaintiffs allege that Pfizer (via misrepresentations and concealment) was able to charge a higher price for Celebrex and Bextra than the drugs' true fair market value, had the health hazards been known by the purchasers. *See* Complaint, Doc. 2, p. 8. Plaintiffs allege that Pfizer thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS § 505/2**, and similar consumer protection statutes in other states.

Served on March 4, 2005, Pfizer removed the action to this Court on April 1, 2005, invoking subject matter jurisdiction under **28 U.S.C. § 1332**. Pfizer maintains that diversity jurisdiction lies both under § 1332 *and* under recently-enacted amendments to § 1332, resulting from passage of the Class Action Fairness Act of 2005, **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332** confers subject matter jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction – here, Pfizer – bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7ᵗʰ Cir. 1997).

In this case, complete diversity exists, because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs," each of whom (as an Illinois citizen) is diverse from Pfizer (a citizen of Delaware and New York). *See Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7ᵗʰ Cir. 2004), *citing Payton v. County of Kane*, 308 F.3d 673, 681 (7ᵗʰ Cir. 2002). The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7ᵗʰ Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7ᵗʰ Cir. 2000). If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under 28 U.S.C. § 1367. *Brand Name*, 123 F.3d at 607.

-2-

Here, Plaintiffs seek to recover damages "in an amount equal to the difference between the price charged for the drugs and the fair market value which the drugs would have had" but for Pfizer's misrepresentations and omissions. Doc. 2, p. 10. In their prayer for relief contained in the state court complaint, Plaintiffs request (*Id.*, p. 11):

> that this action be certified as a class action, that the acts and practices of the Defendant be adjudged in violation of the New Jersey Consumer Fraud Act, and that the Court award them compensatory damages, treble damages, attorneys' fees, their costs of suit, and pre- and post-judgment interest.

Pfizer contends that the amount in controversy suffices, because "Plaintiffs are seeking a 'common fund' on behalf of all class members that exceeds $75,000, exclusive of interest and costs." Removal Notice, Doc. 1, p. 2. The Court, below, solicits briefs on this issue.

Alternatively, Pfizer relies on recent legislation, the Class Action Fairness Act (or "Act"), which amended the federal diversity statute. **28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. Moreover, the statute explicitly permits aggregation in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").**

Pfizer argues that the requisite minimal diversity exists, and "the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs." Doc. 2, p. 2.

-3-

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in Madison County Circuit Court on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day – February 18, 2005.

As it did in another case recently removed by Pfizer, this Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed. *See* 3/24/05 Order (Doc. 12) in *Smith, et al. v. Pfizer*, Case No. 05-cv-0112-MJR.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act.");  151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.").** *See also* **151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Having determined that jurisdiction does <u>not</u> lie under the Class Action Fairness Act, the Court returns to whether jurisdiction lies under the original (pre-Class Action Fairness Act) provisions of § 1332. The Court has found the parties diverse. The potential obstacle is the amount in controversy. After permitting counsel to brief whether one of the named plaintiffs has a claim that surpasses the $75,000 jurisdictional bar, the Court will assess the propriety of Pfizer's removal.

-4-

The Court instructs counsel to carefully review the undersigned Judge's 3/24/05 Order in *Smith v. Pfizer*, Case No. 05-cv-0112-MJR, with particular attention to the discussion of damage disclaimers and binding stipulations, before drafting their briefs regarding the amount in controversy herein.

The Court **DIRECTS** Plaintiffs' counsel to file a brief, no longer than 10 pages, addressing whether the amount in controversy suffices under **28 U.S.C. § 1332** (ignoring the recent amendments which this Court has declared inapplicable here).  Plaintiffs' brief – captioned "Jurisdictional Memorandum" – must be filed on or before April 28, 2005.[1]

The Court **DIRECTS** Pfizer's counsel to file a brief in the nature of a reply (Pfizer already has presented its jurisdictional arguments in the removal notice) no longer than 5 pages. Pfizer's brief – also captioned "Jurisdictional Memorandum" – must be filed by May 5, 2005.

**IT IS SO ORDERED.**

**DATED this 7th day of April, 2005.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

---

[1]    This due-date does not toll or modify any otherwise applicable deadline for remand motions under **28 U.S.C. § 1447(c)**.