UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN THOMPSON, on behalf of herself and all others similarly situated, <br><br>       Plaintiff, <br> v. <br><br> WYETH, INC., a/k/a Wyeth Company, f/k/a American Home Products Corporation, WARNER-LAMBERT COMPANY, PARKE-DAVIS, a Division of Warner Lambert Company, PFIZER, INC., MCNEIL-PPC, INC., NOVARTIS CORPORATION, NOVARTIS CONSUMER HEALTH, INC., RITE-AID CORPORATION, PRESTIGE BRAND, INC. and THE PROCTOR AND GAMBLE COMPANY <br><br>       Defendants. | CIVIL ACTION NO. <br> 05-11169-DPW <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS PFIZER INC.'S AND WARNER-LAMBERT COMPANY LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

     This suit, which was initiated on February 11, 2005, is one of a unique breed of recent consumer class actions that were filed days before the enactment of the Class Action Fairness Act of 2005, Pub. L 109-2, § 1, et seq., ("CAFA") in a transparent effort to escape the statute's reach. CAFA was intended to remedy prior abuses of the class action device by amending 28 U.S.C. § 1332 to expand federal court diversity jurisdiction and "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance…." Pub. L. 109-2 § 2. The attempts of Plaintiff Dawn Thompson ("Plaintiff") to evade federal jurisdiction in this action are evident from her procedural gamesmanship. In late May, 2005, over three (3) months subsequent to filing the Complaint,

Plaintiff served a demand letter upon defendants Pfizer Inc. ("Pfizer") and Warner-Lambert Company LLC[1] ("Warner-Lambert") (collectively "Defendants"), as well as a number of other named defendants, pursuant to G.L. c. 93A, § 9.  Plaintiff also informed Defendants of her intent to amend the Complaint to add a count for violations of Chapter 93A.  It is well-established that service of a 93A demand letter is a jurisdictional prerequisite to the assertion of a 93A claim. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 287 (1984).  It is clear, therefore, that, since Plaintiff could not assert her 93A claim on or before February 18, 2005, she filed a "placeholder" suit to escape CAFA's reach with the full intent of later amending the Complaint to add her 93A claim.

In her Motion to Remand, Plaintiff asserts, among other things, that remand is appropriate because Defendants improperly seek a "retroactive" application of CAFA's provisions.  Defendants hereby oppose the plaintiff's Motion to Remand[2] and urge, ***not*** that the statute be applied retroactively, but simply that CAFA be afforded its full force and effect, consistent with the Supreme Court's June 23, 2005 decision in *Exxon Mobil v. Allapattah Servs., Inc.*, Civil Action No. 04-70, 2005 U.S. LEXIS 5015, *1 (June 23, 2005).

Defendants removed this action on the ground that there is diversity jurisdiction over this putative class action pursuant to the provisions of CAFA because:  (1) the putative class consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of Pfizer and Warner-Lambert, and, while not necessary, all other defendants in this case; and (3) the matter in controversy, after aggregating the claims of the

---

[1]      Defendant Warner-Lambert Company LLC has been improperly named as Warner-Lambert Company.

[2]      Warner-Lambert opposes Plaintiff's Motion to Remand on behalf of itself and its unincorporated Parke-Davis division.

proposed class members, exceeds $5 million, exclusive of interest and costs.  Plaintiff does not dispute that each of these requirements is satisfied or that this action was timely removed within 30 days of service on the defendants as required by 28 U.S.C. § 1446(b).

Plaintiff claims, instead, that CAFA does not apply to this action because it was filed in state court before CAFA was enacted on February 18, 2005.  Section 9 of CAFA provides, "[t]he amendments made by this act shall apply to any civil action commenced on or after the date of enactment of this Act."   The clear majority of federal courts interpreting the meaning of "commenced" under statutes, like CAFA, amending 28 U.S.C. § 1332 have held that "a court must look to the date of removal, not the date that the plaintiff filed his original petition." Lindsey v. Meisenheimer, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997).  Despite the overwhelming weight of this precedent, Plaintiff contends that "commenced" means "filed in state court."  Her position rests upon, among other things, the flawed reasoning of recent federal court decisions which have posited that jurisdictional statutes, like CAFA, should be read narrowly and that the meaning of the term "commenced" under Section 1332 should be interpreted differently in the context of original jurisdiction as compared to removal jurisdiction. These courts did not have the benefit of the Supreme Court's recent decision in *Exxon Mobil v. Allapattah Servs., Inc.* to inform and instruct their conclusions (nor did Defendants when they filed their Notice of Removal in this action).

In *Exxon Mobil* the Supreme Court made clear that jurisdictional statutes, like CAFA, are ***not*** to be construed against the finding of federal jurisdiction, but rather in accordance with ordinary principles of statutory interpretation and established federal jurisprudence.  Id. at *23-*24 (June 23, 2005).  The Supreme Court also rejected the notion that the same term in the same or a related statutory provision should be afforded different meanings in different contexts.

Unable to address its dispositive impact, Plaintiff effectively ignores *Exxon Mobil* in her Motion to Remand, merely noting that the Supreme Court observed that CAFA was not "retroactive."

Interpreting the term "commenced" to mean the date on which the action was commenced in federal court (by removal or otherwise): (i) is supported by ordinary rules of construction, particularly in light of the principle that remedial statutes should be read broadly; (ii) best effectuates Congress' express intent; and (iii) is consistent with prior jurisprudence and related statutory provisions. Accordingly, there is federal diversity jurisdiction in this action under CAFA, and Plaintiff's Motion to Remand should be denied. In further Opposition to Plaintiff's Motion, Defendants state as follows:

## ARGUMENT

### I.    THE PRINCIPLES ARTICULATED IN *EXXON MOBIL* REQUIRE THAT THE TERM "COMMENCED" BE READ BROADLY.

The Supreme Court's decision in *Exxon Mobil* drastically alters the landscape in which courts should now construe federal jurisdictional statutes. In so doing, the Supreme Court exposes both the circuit court and district court decisions, upon which the Plaintiff relies in support of her interpretation of CAFA, as fundamentally flawed in their reasoning. Based upon the principles in *Exxon Mobil*, the term "commenced" should not be construed strictly against the finding of jurisdiction but rather read broadly to afford the statute its full force and effect.

### A.    *Exxon Mobil* Instructs that Jurisdictional Statutes are to be Construed in Accordance with Ordinary Principles of Statutory Construction.

In *Exxon Mobil*, the Supreme Court examined the scope of federal diversity jurisdiction under 28 U.S.C. 1367. Congress enacted Section 1367 in response to federal court decisions holding that Section 1332 did not authorize federal diversity jurisdiction over claims where all plaintiffs, while diverse, did not seek recovery in excess of the amount-in-controversy. Reasoning that Section 1367 reflected a "broad" jurisdictional grant, the Court held that, where

there is complete diversity and where at least one named plaintiff in a class (or non-class) action satisfies the amount-in-controversy requirement, supplemental jurisdiction under Section 1367 exists "over the claims of other plaintiffs in same the Article III case or controversy, even if those claims are for less than the jurisdictional amount."  2005 U.S. LEXIS 5015 at * 8.

At the outset, the Supreme Court emphasized that, while the district courts of the United States are "courts of limited jurisdiction," the scope of federal jurisdiction can be readily expanded by an act of Congress and that any such legislation, as long as it does not tread beyond the bounds of Article III of the Constitution, overrides any prior jurisprudence by the federal courts.  See id. at *12, *21-22.  Importantly, the Court also made clear that federal courts interpreting jurisdictional statutes, like CAFA, must avoid an artificially narrow construction:

> We must not give jurisdictional statutes a more expansive interpretation than their text warrants, but it is just as important not to adopt an artificial construction that is narrower than what the text provides.  No sound cannon of interpretation requires Congress to speak with extraordinary clarity in order to modify the rules of federal jurisdiction within appropriate constitutional bounds.  ***Ordinary principles of statutory interpretation apply… [W]e must examine the statute's text in light of context, structure and related statutory provisions***.  Id. at *23-24 (emphasis supplied).

In addition, the Supreme Court underscored that jurisdictional statutes must be read in light of "established jurisprudence."  Id. at *39.  Further, the Court drew no distinction between statutes granting original jurisdiction and those granting removal jurisdiction for purposes of statutory interpretation.  To the contrary, the Court stressed that removal jurisdiction and original jurisdiction are "closely analogous" and rejected the notion that the scope of federal jurisdictional statutes should be interpreted differently when a matter is before a court on the basis of original jurisdiction as compared with removal jurisdiction.  See id. at 31.  Similarly, in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*, a decision which was issued only ten

(10) days prior to *Exxon Mobil*, the Supreme Court expansively interpreted the scope of federal question jurisdiction in the context of removal under 28 U.S.C. § 1331,  Civil Action No. 04-603, 2005 U.S. LEXIS 4659, *1, *5-6 (June 13, 2005), countering the notion that there is any difference in the rules of interpretation applicable to removal and original jurisdiction.

The keystone of Plaintiff's interpretation of CAFA is the assertion that the statute should be narrowly construed.   In support of this contention, Plaintiff principally relies upon the decision of the Tenth Circuit Court of Appeals in *Pritchett v. Office Depot, Inc.* which also addressed the meaning of the term "commenced" under CAFA.  404 F.3d 1232 (10th Cir. 2005). In *Pritchett*, the Tenth Circuit adopted the view espoused by the Plaintiff here – that "commenced" means "filed in state court."  See id. at 1234-35.  As the Plaintiff points out in her motion papers, the court's reasoning hinged on the principle that "statutes conferring jurisdiction, and particularly removal statutes, are to be narrowly construed."   Id. at 1235.  *Exxon Mobil* rejects this reasoning as fundamentally flawed, rendering any reliance on *Pritchett* as misplaced. See U.S. LEXIS 5015 at *23-24.

**B.    Ordinary Principles of Statutory Interpretation Require Remedial Statutes to be Broadly Construed.**

It is axiomatic that, under ordinary principles of statutory construction, remedial statutes are to be liberally construed.  See Pratico v. Portland Terminal Co., 783 F.2d 255, 261 (1st Cir. 1985).  The express "findings" and "purposes" of CAFA are set forth in Section 2 in great detail and make plain that CAFA was designed to remedy prior abuses of class action suits by expanding federal jurisdiction and encouraging removal:

(a) FINDINGS – Congress finds the following:
…
(2)  Over the past decade, there have been abuses of the class action device that have –

(A) harmed class members with legitimate claims and defendants that have acted responsibly;

(B) adversely affected interstate commerce; and

(C) undermined public respect for our judicial system…

(4)  Abuses in class actions undermine the national judicial system, the free flow of interstate commerce and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are --

(A) keeping cases of national importance out of Federal court;

(B) sometimes acting in way that demonstrate bias against out-of-State defendants; and

(C) making judgments that impose their view on the law of other States and bind the rights of residents of those States.

(b) PURPOSES – The purposes of this Act are to –

(1) assure fair and prompt recoveries for class members with legitimate claims;

(2) restore the intent of the framers of the United States Constitution by providing for Federal Court consideration of interstate cases of national importance under diversity jurisdiction; and

(3) benefit society by encouraging innovation and lowering consumer prices.

Therefore, while not retroactive in application, the expansive remedial scope of CAFA is beyond question, and the term "commenced" should be read as broadly as possible consistent with the statute's express purpose, established federal jurisprudence, and related statutory provisions.

## II.   APPLYING THE PRINCIPLES ARTICULATED IN *EXXON MOBIL* TO CAFA WARRANTS THE EXERCISE OF FEDERAL DIVERSITY JURISDICTION IN THIS CASE.

As discussed below, Defendants' interpretation of the term "commenced" – particularly when CAFA is read broadly in light of its remedial purpose – is wholly consistent with the

statute's express purpose, established federal jurisprudence, and related statutory provisions. The application of the principles articulated in *Exxon Mobil* to CAFA, therefore, warrants the exercise of federal diversity jurisdiction in this case.

### A. Exercising Federal Diversity Jurisdiction in this Action is Consistent with CAFA's Express and Unambiguous Statutory Purpose.

As a threshold matter, Defendants' interpretation of the term "commenced" is consistent with CAFA's unambiguous statutory purpose. This putative class action seeking recovery from out-of-state defendants is precisely the type of "abuse" that Congress sought to remedy in enacting CAFA. Like 28 U.S.C. § 1367, CAFA greatly expands the boundaries of federal diversity jurisdiction under Section 1332. It also relaxes the procedural requirements for removal in actions such as this. As the Supreme Court points out in *Exxon Mobil*, CAFA abrogates the requirement against aggregating claims to satisfy the amount-in-controversy. 2005 U.S. LEXIS 5015 at * 47. In addition, Section 4(a) of CAFA permits removal despite minimal diversity, whereas prior common law mandated complete diversity. Pub L. 109-2 § 4(a). Section 5(a) provides that removal is proper by a single defendant, while prior federal court decisions required all defendants to consent to removal. <u>Id.</u> at § 5(a). Section 5(a) also creates a right to appeal when a motion to remand is allowed. <u>Id.</u>

In her Motion to Remand, Plaintiff vainly counters that her reading of CAFA is supported by the statute's legislative history, including House and Senate Committee reports and floor statements by select "sponsors" of the legislation. However, ***none*** of this legislative history addresses the meaning of the term "commenced." More significantly, *Exxon Mobil* makes clear that reliance on legislative history is ***only*** appropriate when the language is ambiguous on its face. 2005 U.S. LEXIS 5015 at *41. As discussed below, there is ample federal jurisprudence that has interpreted the word "commenced" in federal jurisdictional statutes, including those, like

CAFA, which have amended Section 1332.  Accordingly, the term is unambiguous, and Plaintiff's resort to legislative history is inappropriate.

 *Exxon Mobil* further instructs that, even in circumstances where statutory language is ambiguous, undue reliance on legislative history is fraught with perils.  The Supreme Court explained:

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material…  First, legislative history is often murky, ambiguous, and contradictory.  Judicial investigations of legislative history has a tendency to become… an exercise 'in looking over a crowd and picking out your friends.'  Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresented committee members – or worse yet, unelected staffers and lobbyists – both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory test.  2005 U.S. LEXIS at * 41 (internal citations omitted).

The Supreme Court has also made clear that scattered statements by select Congressmen during floor debates – particularly those of Congressmen opposed to the legislation – are entitled to little, if any, weight for purposes of statutory interpretation.  See, e.g., Garcia v. United States, 469 U.S. 70, 76 (1984) ("'In surveying legislative history, we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill,'" and have "eschewed reliance on the passing comments of one Member, and casual statements from the floor debates");  see also NLRB v. Fruit & Vegetable Packers & Warehousemen, 377 U.S. 58, 66 (1964) ("we have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents").  Therefore, the legislative history cited by the Plaintiff lends no support to her reading of CAFA.

By contrast, to the extent it is even relevant here, CAFA's legislative history provides ample support for a broad application of federal diversity jurisdiction. The Senate Committee stated, for example, that the purpose of the act was to "*encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis supplied). Similarly, both the House and Senate Judiciary Committees stated that it was their "intention with regard to each . . . exception[]" in CAFA "that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." (*Id*. at 45; H.R. Rep. 108-144 at 38). In addition, the Senate and House Committees stated that the requirement of an *aggregate* amount in controversy of $5 million was "intended to expand substantially federal court jurisdiction over class actions," that this "provision[] should be read broadly, with a strong preference that interstate class action be heard in a federal court," and that "the definition of 'class action' is to be interpreted liberally." (S. Rep. 108-123 at 44, 48; H.R. Rep. 108-144 at 37). The Senate Report also rejected the notion that there should be "a presumption that a plaintiff chooses his or her own court." (S. Rep. 108-123 at 57). Rather, "the whole purpose of diversity jurisdiction is to preclude any such presumption by allowing state-law based claims to be removed from local courts to federal courts, so as to ensure that all parties can litigate on a level playing field and thereby protect interstate commerce interests." *Id*. Finally, both Committees explained, "the real harm to federalism is the status quo – leaving the bulk of class action cases in state court." (S. Rep. 108-123 at 59; H.R. Rep. 108-144 at 26).

In short, interpreting the term "commenced" to mean the date on which the action was commenced in federal court (by removal or otherwise) best effectuates CAFA's statutory purpose. Any reading to the contrary would be in direct conflict with Congress' intent to expand the number of class actions subject to federal jurisdiction.

**B. Exercising Federal Diversity Jurisdiction in this Case is Consistent with Established Federal Jurisprudence and with Related Statutory Provisions.**

Both prior federal jurisprudence and related statutory provisions also lend ample support to Defendants' reading of CAFA.

1.    Exercising Federal Diversity Jurisdiction in this Case is Consistent with Established Federal Jurisprudence Interpreting the Meaning of the Term "Commenced."

There is a wealth of federal court decisions that have interpreted the meaning of the term "commenced" in identical provisions contained in federal jurisdictional statutes that, like CAFA, have amended the scope of diversity jurisdiction under Section 1332. The vast majority of these cases hold that such statutes applied to actions removed to federal court *after* the statute's effective date, even though the action was filed in state court *before* the effective date. See, e.g., Lindsey v. Meisenheimer, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997) (interpreting amendments to Section 1332 and finding that "a clear majority of courts [have] held that a court must look to the date of removal, not the date that the plaintiff filed his original petition"); Hunt v. Transp. Indem. Ins. Co., 1990 U.S. Dist. LEXIS 16555 at *1, *2-3 (D. Hawaii July 30, 1990) (interpreting amendments to Section 1332 and holding that action "commenced" when removed to federal court); Abernathy v. Consol. Cab Co., 169 F. Supp. 831, 833-34 (D. Kan. 1959) (interpreting amendments to Section 1332 and holding that action removed to federal court after the date of enactment is "commenced" after the date of enactment); Casteel v. Great Southern Trucking Co., 167 F. Supp. 435, 436 (E.D. Tenn. 1958) (interpreting amendments to Section 1332 and holding that the term "commenced" means commenced in federal court); Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co., 166 F. Supp. 319, 323 (E.D.N.Y. 1958) (interpreting amendments to Section 1332 and holding that the term "commenced" means "actions commenced in [federal] District Court, whether by original jurisdiction or removal" on

or after the effective date); see also Cedillo v. Valcar Enters., 773 F. Supp. 932, 939 (N.D. Tex. 1991) (interpreting Section 1367 and holding that the term "commenced" should be read as commenced in federal court "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked").

In *Lorraine Motors v. Aetna Cas. & Sur. Co.*, for example, the United States District Court for the Eastern District of New York considered whether an amendment to Section 1332 increasing the minimum jurisdictional amount from $3,000 to $10,000 – which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. 85 – 554, § 3; emphasis added) – applied to an action filed in state court before the effective date and removed to federal court after the effective date. 166 F. Supp. at 323. The court held that the term "commenced" meant "actions commenced in the [federal] District Court, whether by original jurisdiction or removal" on or after the effective date, and, thus, the new jurisdictional provision applied to the action. Id.

The United States District Court for the District of Kansas considered the identical question presented by *Lorraine Motors* in *Abernathy v. Consol. Cab. Co.*, 169 F. Supp. 831, as did the United States District Court for the Eastern District of Tennessee in *Casteel v. Great Southern Trucking Co.*, 167 F. Supp. 435. Citing *Lorraine Motors* with approval, the court in *Abernathy* held that it "must rule" that the action removed to federal court after the date of enactment is "commenced" after the date of the enactment and that the new jurisdictional provisions applied to the removed action. 169 F. Supp. at 834. Likewise, in *Casteel*, the court ruled that the term "commenced" means commenced in the federal court. 167 F.Supp. at 436 Relying on the principle set forth in a leading treatise, the court reasoned that "the law in effect at the time of the application to remove controls." Id. (citing 76 C.J.S. Removal of Causes § 2).

Accord <u>Hunt v. Transport Indem. Ins. Co.</u>, 1990 WL 192483 (D. Hawaii July 30, 1990) (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied to action); <u>Gasper v. Nat'l Tea Co.</u>, 1990 U.S. Dist. LEXIS 639, *1 at *2-3 (E.D. La. Jan. 25, 1990) (same).

Similarly in *Cedillo v. Valcar Venters*, 773 F. Supp. 932, the United States District Court for the Northern District of Texas addressed the question of whether 28 U.S.C. § 1367 applies to an action filed in state court before the statute's effective date, but removed after the effective date. Like CAFA, Section 1367 applies only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, § 310(c) (emphasis added). Interpreting this language, the court held that the term "commenced" should be read as commenced in federal court – rather than state court – "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." <u>Cedillo</u>, 773 F. Supp. at 939. The court further noted that the newly enacted Section 1367 was "fully applicable" to the removed action because the date on which federal jurisdiction was first "invoked" was after the effective date of the statute. Therefore, the action was "commenced" after the effective date. 773 F. Supp. at 939.

*Cedillo*, *Lorraine Motors*, *Abernathy*, *Casteel*, *Hunt* and *Gasper* instruct that, in determining when this removed action was "commenced" for purposes of the applicability of CAFA, the relevant date is the first time federal "jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. Accordingly, CAFA is "fully applicable" to this removed action because federal jurisdiction was first invoked on June 6, 2005, after CAFA's February 18, 2005 effective date.

Despite these federal court decisions, Plaintiff makes the baffling assertion in her Motion to Remand that Defendants "can cite no case law or authority to confirm their reading of the statute." Plaintiff apparently implies that this case law has no impact on the meaning of the term

"commenced" in CAFA even though these decisions interpret identical language in statutes that, like CAFA, amended Section 1332 or in other federal jurisdictional statutes. Not surprisingly, *Exxon Mobil* squarely rejects the notion that the same language in two separate jurisdictional statutes (much less the same language in the **same** jurisdictional statute as is the case here) should be afforded different meanings. 2005 U.S. LEXIS 5015 *29-30.

> 2.    Defendants' Interpretation of the Term "Commenced" is Further Confirmed by Interpretations of Related Statutory Provisions.

That Congress intended "commenced" to mean the date of removal is further confirmed by interpretations of related statutory provisions. The Commentary in the United States Code Annotated to the 1988 amendment to 28 U.S.C. § 1332, which raised the jurisdictional minimum to $50,000, explicitly states – citing *Lorraine Motors* – that the "sounder" view is "the moment that counts in removal situations is the moment of removal to federal court, not commencement in state court." It is a black letter rule of statutory construction that "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978). Therefore, it must be presumed that Congress was aware that a clear majority of courts had interpreted "commenced" with respect to several amendments of jurisdictional statutes to mean the date that the action was commenced in federal court upon the filing of the notice of removal when Congress used virtually identical language in CAFA. Surely, if Congress had meant for "commenced" to mean something different in CAFA, it would have said so.

In addition, when Congress has intended that a jurisdictional statute apply only to cases "commenced in state court" after the statute's effective date, it has explicitly said so. For example, in 1986, when Congress amended the removal statute to permit removal of an entire action that contained state law claims and a separate and independent federal law claim,

Congress provided that the amendment would "apply with respect to claims in civil actions commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) (emphasis added). Because Congress did not expressly include the limiting language "in State courts" in CAFA, CAFA applies to actions filed in state court prior to the effective date, but removed to (and, thus, "commenced" in) federal court on or after the effective date.

III.     **THE DECISIONS ON WHICH PLAINTIFF RELIES ARE INCORRECTLY DECIDED AND PLAINLY DISTINGUISHABLE.**

        In addition to *Pritchett*, Plaintiff cites to a number of federal court decisions, including several involving Pfizer, which, on their face, support the Plaintiff's interpretation of CAFA. None of these cases were decided by the First Circuit or the United States District Court for the District of Massachusetts, and, therefore, are not binding on this Court. Nor should these decisions have any precedential value because they are incorrectly decided, or otherwise distinguishable, for one of two reasons. Some rest on the proposition that CAFA should be strictly construed. As previously discussed, this notion was thoroughly debunked by the Supreme Court in *Exxon Mobil*. The remainder posits that the exercise of federal diversity jurisdiction in cases like this would effect a retroactive application of the statute. This assertion is prominent in *Pritchett* and in *Knudsen v. Liberty Mutual, Ins. Co.,* Civil Action No. 05-8010, 2005 U.S. App. LEXIS 10440 * 1 (7th Cir. June 7, 2005), a recent decision by the Seventh Circuit.

        Both *Pritchett* and *Knudsen* are easily distinguishable on their facts. In *Pritchett*, the defendant filed a Notice of Removal almost ***two years*** after service of the Complaint and only one month before trial. 404 F.3d at 1233-34. Similarly, in *Knudsen*, the defendant sought removal ***five years*** after the suit had been filed in state court. 2005 U.S. App. LEXIS 10440 at *

1.  In both instances, the defendants acted in contravention of the requirement in 28 U.S.C. § 1446(b) that an action be removed within thirty (30) days of service, which CAFA does not alter or amend.[3]  Thus, in essence, both defendants sought an improper retroactive application of the statute, and, in both instances, the Tenth Circuit and the Seventh Circuit came to the correct conclusions, albeit for the wrong reasons.

Clearly, CAFA does not apply to every class action filed in state court prior to the effective date of the statute.  Here, however, in stark contrast to the *Pritchett* and *Knudsen* defendants, Pfizer and Warner-Lambert timely removed this action within thirty (30) days of service of the Complaint.  Consequently, Defendants seek ***prospective***, rather than retroactive, application of the statute.  CAFA only applies to those actions which were filed in state court before February 18, 2005 and removed to federal court within thirty (30) days of service of the Complaint.  Therefore, the assertion that Defendants' reading of CAFA will result in a "tidal wave" of cases currently pending in state court that will be removed to federal court, thereby overwhelming the federal dockets, is a gross overstatement.  Any impact of the limited number of cases that are removable under Defendants' interpretation of the statute on the resources of the federal courts will be negligible.  Moreover, the ability to remove all such actions that fall within a fair reading of CAFA is precisely what Congress intended.

In short, Defendants do not disagree with the ultimate outcome in either *Pritchett* or *Knudsen* because, even under Defendants' reading of the statute, there was no basis for either of the defendants in these cases to remove under CAFA.  Nevertheless, as set forth at length herein,

---

[3]  Nor does CAFA alter or amend the aspect of 28 U.S.C. § 1446(b) that gives rise to a renewed thirty-day window for removal of a case when the plaintiff amends the pleadings or otherwise undertakes an action that gives rise to the right to remove the case.

the reasoning in both of these cases, as well as the other decisions on which Plaintiff relies, was deeply flawed – particularly in light of *Exxon Mobil*.

## CONCLUSION

In conclusion, the Supreme Court's decision in *Exxon Mobil* has drastically altered the landscape in which federal jurisdictional statutes are construed. The Supreme Court soundly rejected the notion that federal jurisdictional statutes should be interpreted narrowly, thereby obliterating the lynchpin of Plaintiff's argument. *Exxon Mobil* instructs that federal jurisdictional statutes should be read in accordance with ordinary principles of statutory interpretation and due weight should be afforded to the statute's express purpose, established jurisprudence, and the related statutory provisions. When CAFA is viewed in this context – particularly in light of its intent to expand federal diversity jurisdiction and remedy abuses of the class action device – it is clear that the term "commenced" should be interpreted to mean "commenced in federal court." This reading is also consistent with prior federal jurisprudence interpreting the exact same statutory language. Therefore, federal diversity jurisdiction exists in this case, and Plaintiff's Motion to Remand should be denied.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument upon each and every issue raised in

Plaintiff's Motion to Remand and Defendants' Opposition thereto.

Respectfully submitted,

**PFIZER INC. and WARNER-LAMBERT
COMPANY LLC (on behalf of itself and its
unincorporated Parke-Davis Division),**

By their attorneys,

*/S/ Joseph J. Leghorn*

_____
Joseph J. Leghorn (BBO No. 292440)
J. Christopher Allen, Jr. (BBO No. 648381)
NIXON PEABODY LLP
100 Summer Street
Dated: July 13, 2005            Boston, MA  02110
(617) 345-1000

## CERTIFICATE OF SERVICE

I, J. Christopher Allen, Jr., do hereby certify that a true copy of the above document was
served upon all counsel of record by electronic service on this 13th day of July, 2005.

*/S/ J. Christopher, Allen, Jr.*

_____
J. Christopher Allen, Jr.